```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 07-153 (JBS) |
| FREDERICK J. BIRKS, CORNELIA ELDRIDGE, and ROBERT BEURET | **OPINION** |
| Defendants. | |

**APPEARANCES:**

Eric M. Schweiker, Assistant United States Attorney
Maureen Nakly, Assistant United States Attorney
William Fitzpatrick, Assistant United States Attorney
OFFICE OF THE U.S. ATTORNEY
402 East State Street
Room 430
Trenton, NJ 08608
    Attorneys for the United States of America

James C. Rehnquist, Esq.
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
    Attorney for Defendant Robert Beuret

Laura Braswell, Esq.
Morris W. Pinsky, Esq.
318 Haddon Avenue
Westmont, NJ 08108
    Attorneys for Defendant Cornelia Eldridge

Christopher H. O'Malley, Assistant Federal Public Defender
OFFICE OF THE FEDERAL PUBLIC DEFENDER
800-840 Cooper Street
Suite 350
Camden, NJ 08102
    Attorney for Defendant Frederick J. Birks

**Simandle, District Judge:**

## I. INTRODUCTION

This matter came before the Court on the motion of Defendant Robert Beuret to dismiss the Second Superseding Indictment for lack of venue, pursuant to Federal Rules of Criminal Procedure 12 and 18. Co-defendants Cornelia Eldridge and Frederick J. Birks joined in the motion.

The Second Superseding Indictment (the "Indictment" or the "Second Superseding Indictment") alleges, in general, that Defendants Frederick J. Birks, Cornelia Eldridge and Robert Beuret conspired to commit securities fraud in connection with the purchase and sales of eContent stock, in violation of 18 U.S.C. § 371. The alleged object of the conspiracy was to issue free-trading eContent stock to an individual denominated as CW-1 in order to compensate him and others working with him for their illegal stock promotion activities in the public market for eContent stock. The Second Superseding Indictment, as presently pled, alleges that this transfer of free-trading eContent stock to CW-1 occurred on June 3, 2002.

During the briefing on the venue motion, which the Government opposes, it came to light that there is a material error in the Indictment as to the date of the accomplishment of the object of the conspiracy. Specifically, the Indictment charged that the transfer of eContent stock to CW-1 occurred on

or about June 3, 2002, but the Government seeks to prove that actually occurred on or about June 26, 2002, which would thereby become the corrected date for the achievement of the object of the conspiracy.  The Government does not seek to alter the alleged object of the conspiracy but it concedes that a change of date for accomplishing this object would alter the whole analysis of whether the Court has venue.  That date change alters the venue analysis because the only overt acts alleged in the Second Superseding Indictment to have occurred in New Jersey occurred after the accomplishment of the conspiracy on June 3, 2002, as presently alleged, but before (and presumably in furtherance of) the proposed corrected date of June 26, 2002 for accomplishment of the object of the conspiracy.

   The Court heard oral argument on May 1, 2008.  At that time Defendant Frederick J. Birks joined in the motion to dismiss the Second Superseding Indictment, but indicated that if the case were to go forward he would prefer to be tried in the District of New Jersey.

   Although this motion was filed as a motion to dismiss for lack of venue, because the Government now concedes that the Second Superseding Indictment contains an error and because it intends to prove at trial facts that differ from those alleged in the indictment, the more important and threshold issue for the Court to determine is whether Defendant may be tried on the

erroneous Indictment.  That is, the Court must decide whether that change at trial would constitute an impermissible constructive amendment of the Second Superseding Indictment.

Because the Court finds that the date on which CW-1 was allegedly compensated for illegal stock promotion activities is material to the charges against Defendants, the Court is unable to determine the question of venue upon the present record, and shall temporarily stay this case for the purpose of enabling the United States to seek clarification from the grand jury in the form of a Third Superseding Indictment.

The Court will not opine on whether it would have venue over the charges as they might be alleged in the future, given that no new indictment has yet been issued.  Such an opinion would be advisory and speculative.  If there is a Third Superseding Indictment filed in this case and if Defendants raise a venue challenge to that indictment, the Court can adjudicate any venue challenge at that time.

**II.  SUMMARY OF THE SECOND SUPERSEDING INDICTMENT**

Defendants Robert Beuret, Cornelia Eldridge and Frederick J. Birks are charged with one count of violating 18 U.S.C. § 371 by conspiring (1) to "employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities . . . contrary to [15 U.S.C. §§ 78j(b), 78ff(a) and 17 C.F.R. § 240.10b-5]"; and (2) "to . . . make untrue statements of

4

material fact, and to omit to state material facts" "in a registration filed under the Securities Act, namely a Form S-8 registration statement authorizing the issuance of 1.1 million free-trading shares of eContent stock to CW-1," contrary to 15 U.S.C. § 77x.  (Indictm't ¶ 2.)

> It was an object of the conspiracy for defendants FREDERICK J. BIRKS, CORNELIA ELDRIDGE, and ROBERT BEURET, [and other co-conspirators] to issue free-trading eContent stock to CW-1, pursuant to a materially false and fictitious Form S-8 registration statement, in order to compensate CW-1 and others who worked with him, including Defendant FREDERICK J. BIRKS [and unindicted co-conspirators], for illegal stock promotion activities regarding eContent's publicly traded stock.

(Indictm't ¶ 3.)

In paragraph 15, the indictment alleges that Cornelia Eldridge and others caused the shares to be transferred to an account owned by CW-1 on June 3, 2002.

> On or about June 3, 2002, defendant CORNELIA ELDRIDGE and co-conspirators William Campbell and Gary Goodell caused eContent to deposit 1.1 million free-trading shares of eContent stock to a brokerage account that CW-1 held at Camelot.

(Indictm't ¶ 15.)  Thus, the Second Superseding Indictment alleges that object of the conspiracy was accomplished by June 3, 2002, Beuret argues.  On the other hand, the Indictment

5

specifically alleges that the conspiracy lasted until September 2002. (Indictm't ¶ 2.)

Paragraphs 5-10 of the indictment allege the means and methods of the conspiracy and paragraphs 11-26 allege sixteen overt acts committed "in furtherance of the conspiracy and to effect its unlawful objects." (Indictm't at 8.) Six of these acts allegedly occurred on or about June 3, 2002. (Id. ¶¶ 14-19.)

The indictment alleges that three overt acts occurred in New Jersey:

> On or about June 3, 2002, defendant FREDERICK J. BIRKS and others caused Camelot to purchase approximately 40,000 shares of eContent stock from a market maker (a brokerage company that agreed to buy and sell prices in eContent stock, thereby ensuring the existence of a market for the stock) located in New Jersey, such purchases being designed to support the artificially high market price of eContent stock, on a day when CW-1 and AFP [(a co-conspirator's account name)] were selling substantial quantities of the thinly-traded stock.
> [. . .]
>
> On or about June 10, 2002, defendant CORNELIA ELDRIDGE and [others] caused an accounting firm in New Jersey to execute a consent incorporating certain financial statements in connection with the form S-8 [that authorized the issuance of 1.1. million free-trading shares of eContent stock to CW-1].
>
> [ . . .]
>
> On or about September 20, 2002, defendant FREDERICK J. BIRKS [and others] caused AFP to sell approximately 29,000 shares of eContent's publicly traded stock, using market makers located in New Jersey.

(Indictm't ¶¶ 19, 22, 26.)

### III. DISCUSSION

#### A. Beuret's Motion to Dismiss

Defendant Beuret moved to dismiss the indictment for lack of venue. The parties agree that United States v. Perez, 280 F.3d 318 (3d Cir. 2002) accurately sets forth that a defendant has a constitutional right to proper venue, that is a trial in the district in which the crime occurred.

"[V]enue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy," id. at 329, that is, an overt act, 18 U.S.C. § 371.

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. The federal conspiracy statute itself provides that overt acts are any acts done "to effect the object of the conspiracy." Thus, the Court will have venue if acts alleged in the indictment to effect the object of the conspiracy occurred in New Jersey. In other words, if any of the three acts alleged above were in furtherance of the conspiracy charged in the Indictment, the Court has venue.

Defendant Beuret argues that, according to the Indictment,

7

none of the three acts that occurred in New Jersey was done in furtherance of the charged conspiracy and therefore the Court does not have venue.  Beuret's argument depends, in significant part, on the dates alleged in the charged conspiracy and the general rule that "[a] conspiracy terminates when its 'principal purposes' have been accomplished."  United States v. Di Pasquale, 740 F.2d 1282, 1290 (3d Cir. 1984).  Thus, it matters whether the alleged object of the conspiracy was accomplished on June 3, 2002 or June 26, 2002, for purposes of determining whether any of the overt acts alleged therein was to effect the object of the conspiracy.

    The Government argues that the nexus between the New Jersey overt acts and the object of the conspiracy becomes clear if it explains an error in the indictment.  In Paragraph 15, the Indictment alleges that on or about June 3, 2002, certain co-conspirators caused eContent to deposit 1.1 million shares of eContent stock into CW-1's account at Camelot.  Compensating CW-1 with this stock is also alleged to be the object of the conspiracy.  However, on this motion the Government now alleges that the shares were issued June 26, 2002 and deposited into CW-1's account on or about July 1, 2002.  According to the Government, Paragraph 15 should have alleged that certain co-conspirators caused eContent to issue 1.1 million shares of stock to CW-1 on or about June 26, 2002, instead of on June 3, 2002.

Thus, the Government argues, the acts that occurred in New Jersey on June 3 and 10, 2002, alleged to be overt acts in paragraphs 19 and 22, could have been and were done to achieve the object of the conspiracy, which, if now clarified, was accomplished around June 26.  The Government attempts to mitigate the effects of such a belated "factual clarification" by declining to present evidence of this as an overt act at trial: "In light of this, the Government will not seek to submit the overt act set forth in paragraph 15 of the Second Superseding Indictment to the jury." (Gov. Br. at 8.)  However, practically that would be impossible because the compensation to CW-1 is not only an overt act, but also the object of the conspiracy itself.

The Government further argues that an overt act occurring in New Jersey needs to be proved at trial but does not have to be alleged in the indictment.

Finally, the Government argues that two additional later overt acts were done in New Jersey in furtherance of the conspiracy: after-market trades in eContent stock that were executed through New Jersey market makers.  The Government alleges that because after-market sales are acts in furtherance of market manipulation of the price of the stock, that suffices for meeting the charged object of the conspiracy – fraudulent issuance of stock as compensation.  Defendant Beuret argues that market manipulation is not encompassed in the charged conspiracy

9

object and that, therefore, the after-market trades cannot be in furtherance of the charged conspiracy or support a finding that this Court has venue.

**C.   Analysis**

As noted above, the Government intends to prove at trial that compensation of CW-1 occurred on or about June 26, 2002, rather than on or about the June 3 date charged.  The Government further argues that such a change would make clear how this Court has venue, that is, how acts that were done in New Jersey after June 3 were done in furtherance of the conspiracy.  However, the Court cannot permit the Government to proceed in this manner upon the Second Superseding Indictment.  The Government cannot amend such a material allegation in the Indictment by a "factual clarification" in a brief and proofs at trial that vary so substantially from the Indictment because the Defendant has a Fifth Amendment right to be tried only on the charges indicted by the grand jury.  See U.S. Const. Amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.").

> A constructive amendment occurs where a defendant is deprived of his "substantial right to be tried only on charges presented in an indictment returned by a grand jury." United States v. Miller, 471 U.S. 130, 140, (1985) (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)) (internal quotation marks omitted). A constructive amendment to the indictment constitutes "a per se violation of the fifth amendment's grand jury clause."

>United States v. Castro, 776 F.2d 1118, 1121-22 (3d Cir. 1985).

United States v. Syme, 276 F.3d 131, 148 (3d Cir. 2002). "Moreover, the Sixth Amendment guarantees that criminal defendants be given sufficient notice of the nature of the charges in order to defend against them." United States v. Thomas, 610 F.2d 1166, 1173 (3d Cir. 1979).

The Court finds that the change in date of the accomplishment of the object of the conspiracy is not a permissible variance, given that the permissible variance doctrine applies when trial evidence is slightly different than anticipated and given that, even if the doctrine applied to this case, this factual error in the charge is too important to the classification of overt acts in furtherance of the charged conspiracy, and hence to the propriety of venue in this District, to be permitted as a harmless variance.

>[T]wo types of variations between the indictment and evidence exist: amendments, which occur when the charging terms of the indictment are altered, and variances, where the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. [United States v. Somers, 496 F.2d 723, 743 n.38 (3d Cir.), cert. denied, 419 U.S. 832 (1974)] (quoting Gaither v. United States, 413 F.2d 1061, 1071 (D.C. Cir. 1969). The difference between these variations is not merely academic, for we observed that Supreme Court precedent indicated that if the variation were characterized as an amendment, it would constitute a per se violation of the

> fifth amendment's grand jury clause. <u>Somers</u>, 496 F.2d at 743. Variances, however, are subject to less strict case-by-case inquiry, and would only constitute reversible error in those cases where the variance prejudiced the defendant's defense. <u>Id.</u> at 743-44. Our analysis led us to conclude that:
>
>> in evaluating variances, we must first determine whether there has been a modification in the elements of the crime charged . . . . If such a modification exists, we will apply the per se rule of [<u>Stirone v. United States</u>, 361 U.S. 212 (1960)] so as to preserve the shielding function of the grand jury. If, on the other hand, the variance does not alter the elements of the offense charged, we will focus upon whether or not there has been prejudice to the defendant. . . .
>
>> <u>Somers</u>, 496 F.2d at 744 (citations omitted).

<u>United States v. Castro</u>, 776 F.2d 1118, 1122 (3d Cir. 1985).

Here, the Government is seeking, before trial, to change a central allegation in the Indictment, the date on which the object of the conspiracy was accomplished, in order to show that other acts alleged in the indictment as occurring after the object was accomplished actually occurred before the object was accomplished and, by implication, in furtherance of the conspiracy.  These are not minuscule variations; the object of the conspiracy and the acts allegedly done in furtherance of the conspiracy are essential elements of the crime that describe the contours of the alleged conspiracy.

Indeed, the law of conspiracy requires that to convict

Defendants of conspiracy in violation of 18 U.S.C. § 371, the sole charge here, the Government will have to "establish 'a unity of purpose, intent to achieve a common goal, . . .' [and] must proffer evidence that [each defendant] knew of the agreement and intended both to join it and to accomplish its illegal objects." United States v. McKee, 506 F.3d 225, 241 (3d Cir. 2007) (quoting United States v. Wexler, 838 F.2d 88, 90-91 (3d Cir. 1988)).  See also United States v. Roshko, 969 F.2d 1, 5 (2d Cir. 1992) ("Without question, the object of a conspiracy constitutes an essential element of the conspiracy offense.").[1]  Because the timing of the overt acts is highly suggestive of the charged conspiracy in this case, a change of the date on which the object of the conspiracy was accomplished may be highly material to giving the defendants adequate notice of the contours of the conspiracy and overt acts to effect its charged object.

The overt acts as presented to the Grand Jury occurred very close together in time, and many on the same day as the compensation to CW-1 was allegedly accomplished.  If CW-1 was

---

[1]
> In order to prove a conspiracy to defraud the United States in violation of 18 U.S.C. 371 (Count 1), the evidence must establish the following elements beyond a reasonable doubt: (1) an agreement to defraud the United States, (2) an overt act by one of the conspirators in furtherance of that objective, and (3) any conspirator's commission of at least one overt act in furtherance of the conspiracy.

United States v. McKee, 506 F.3d 225, 238 (3d Cir. 2007).

actually compensated nearly a month later, it is not clear a grand jury would find the causal connection between that and the overt acts that would be necessary to indict, or that they would find the same connection they found in this indictment.  In other words, if compensation of CW-1 did not occur until a month after the alleged overt acts occurred, rather than on the same day as them, a grand jury might not find that those acts were done to achieve the object of compensating CW-1.  While this seems unlikely in light of the Government's proffered facts, the matter deserves clarification by the Grand Jury to assure adequate notice to defendants and focus of these important allegations.

    The Court does not find, however, that a change in the date of the accomplishment of the object changes an essential element of the crime.  If the object remains the same – that is, "to issue free-trading eContent stock to CW-1, pursuant to a materially false and fictitious Form S-8 registration statement, in order to compensate CW-1 and others . . ." – then a Third Superseding Indictment changing the date of accomplishment of the charged conspiracy would not be introducing a new element of the crime presently charged.  It follows that the requisite amendment herein is not for the purpose of defining a new object, but for clarifying whether the Grand Jury finds that the object was achieved on June 3, 2002 or June 26, 2002, or some other date, before this Court can engage in venue analysis.  Thus, while the

case cannot proceed in its present form, the United States has requested the opportunity to seek a Third Superseding Indictment to clarify this important fact.

The Court finds, in its discretion, that the most prudent course is to temporarily stay this case for a period of time - thirty (30) days – that affords the United States a sufficient opportunity to seek a clarifying indictment before this Court can determine whether venue is proper.  The clarification of dates does not alter the substantive charge of conspiracy and its alleged object.  Outright dismissal of the Second Superseding Indictment would likewise be inappropriate because it may confer a windfall upon Defendants in a case where venue is ultimately proper.

**IV.   CONCLUSION**

Altering the date that CW-1 was actually compensated from the indicted date of June 3, 2002 to June 26, 2002 would change a central allegation in the indictment necessary to a determination of venue by clarifying whether acts allegedly undertaken in furtherance of the charged conspiracy occurred in the District of New Jersey.  In this case, the United States has conceded that the date of achievement of the object of the conspiracy must be changed, and that the overt acts allegedly in furtherance of the conspiracy should be judged by the new date rather than the date found by the Grand Jury.  Therefore, to protect Defendants' Fifth

15

Amendment rights to be tried only on the charges for which the Grand Jury returned an indictment, the Court must grant the motion to the extent of staying proceedings upon the Second Superseding Indictment for a period of thirty (30) days without prejudice to the Government's right to secure a Third Superseding Indictment correcting this defect within thirty (30) days.  If no Third Superseding Indictment is filed within this period, the Second Superseding Indictment will be subject to the possibility of dismissal at that time.  The accompanying Order shall be entered.

| | |
|---|---|
| **September 2, 2008** | _s/ Jerome B. Simandle_ |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |