[re Docket Item 76]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

FREDERICK J. BIRKS and
ROBERT BEURET

              Defendants.

Criminal No. 07-153 (JBS)

**OPINION**

**APPEARANCES:**

Eric M. Schweiker, Assistant United States Attorney
Maureen Nakly, Assistant United States Attorney
William Fitzpatrick, Assistant United States Attorney
OFFICE OF THE U.S. ATTORNEY
402 East State Street
Room 430
Trenton, NJ 08608
    Attorneys for the United States of America

James C. Rehnquist, Esq.
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
    Attorney for Defendant Robert Beuret

Christopher H. O'Malley, Assistant Federal Public Defender
Lisa Evans Lewis, Assistant Federal Public Defender
OFFICE OF THE FEDERAL PUBLIC DEFENDER
800-840 Cooper Street
Suite 350
Camden, NJ 08102
    Attorney for Defendant Frederick J. Birks

**Simandle, District Judge:**

**I.   INTRODUCTION**

The Court is presented with Defendant Robert Beuret's ("Defendant Beuret") motion to dismiss the Third Superseding Indictment ("TSI"), which charges Defendant Beuret and Defendant Frederick Birks ("Defendant Birks") with conspiracy to defraud the United States under 18 U.S.C. § 371 [Docket Item 76].[1] Defendant Beuret offers two reasons why the Court should dismiss the TSI: (1) he argues that the TSI is untimely; and (2) he maintains that even if the TSI is timely, it does not sufficiently allege venue in the District of New Jersey and must be dismissed for that reason.  The Court finds, for the reasons explained below, that the TSI is timely under <u>United States v. Friedman</u>, 649 F.2d 199 (1981), because the statute of limitations was tolled with the filing of the Second Superseding Indictment ("SSI") in this case, and that venue is sufficiently alleged.

**II.   ALLEGATIONS**

Given the procedural posture of this case, no evidence has been presented and the only facts are those alleged in the SSI and the TSI.  Both allege that for much of the year 2002, Defendants Beuret and Birks were engaged in a conspiracy to defraud the United States by (1) willfully employing

---

[1] Defendant Birks has not joined in this motion.  Cornelia Eldridge, originally also a co-defendant, has since passed away and is included in the TSI only as a co-conspirator.

"manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities," and (2) knowingly and wilfully making untrue statements of material fact or omitting necessary facts when submitting a registration statement, Form S-8, filed under the Securities Act.  (SSI ¶ 2; TSI ¶ 2.)  An object of the conspiracy was "to issue free-trading eContent stock to John P. Serubo, pursuant to a materially false and fictitious Form S-8 registration statement, in order to compensate John P. Serubo and others who worked with him, including [Defendant Birks] and co-conspirators Anthony Castore and P.P., for illegal stock promotion activities regarding eContent's publically-traded stock."[2]  (SSI ¶ 3; TSI ¶ 3.)

Though similar in many ways, the allegations in the TSI are not identical to the allegations in the SSI.  First, in the SSI the last alleged overt act in furtherance of this conspiracy occurred on September 20, 2002, while in the TSI the last alleged overt act was on November 6, 2002.  (SSI ¶ 26; TSI ¶ 30.)  Second, in the SSI John P. Serubo received the aforementioned free-trading eContent stock on June 3, 2002, and the fraudulent Form S-8 authorizing the issuance of those stock was executed on June 7, 2002.  (SSI ¶¶ 15, 20.)  The TSI, however, alleges that the Form S-8 was executed on June 26, 2002, and that Serubo

---

[2] The only difference between the SSI and the TSI in this particular paragraph is that the TSI names John P. Serubo, while the SSI refers to him as "CW-1."

received the stock on July 1, 2002.  (TSI ¶¶ 25-26.)  Third, the
TSI includes four new overt acts, two of which were allegedly
perpetrated by Defendant Beuret.  (TSI ¶¶ 12, 13, 29, 30.)
Fourth, the TSI explains how the Form S-8 was materially false.
(TSI ¶ 15.)

### III. PROCEDURAL HISTORY

#### A.   Motion to Dismiss Second Superseding Indictment

As is already evident, there have been four indictments
issued in this case, but Defendant Beuret was not joined as a
defendant until the SSI.  On September 18, 2007, the grand jury
returned the SSI.  Defendant Beuret subsequently moved to dismiss
the SSI for lack of venue, joined by Defendant Birks and the late
Cornelia Eldridge.  Defendants argued, in part, that because two
of three alleged overt acts that occurred in New Jersey happened
after John Serubo received the free-trading eContent stock (what
Defendants characterized as the sole object of the conspiracy),
they could not be in furtherance of the conspiracy and thus,
Defendants urged, were not sufficient to allege proper venue in
New Jersey.  In response, the Government objected to Defendants
narrow reading of purpose of the conspiracy as described in the
SSI, but also sought to correct an error in that indictment,
stating that evidence showed the eContent stock was issued,
instead, on or about June 26, 2002 and that John Serubo received
the stock on July 1, 2002.  Thus, the Government asked for an

opportunity to "amend" the SSI to correct this error.

The Court, in response to these various requests, declined to rule on Defendants' motion to dismiss, but also refused to permit the Government to amend the SSI to correct the error in dates unless the matter was presented to a grand jury.  United States v. Birks, No. 07-153, 2008 WL 4104570 (D.N.J. Sept. 2, 2008).  The Court found that the date on which Mr. Serubo received the eContent stock was too important to the allegations of conspiracy to permit the Government to merely amend the SSI to include these new dates.  Id. at *4-6.  The Court nevertheless gave the Government an opportunity to obtain a third superseding indictment to the correct the problem.  Id. at *6.  Moreover, the Court declined to rule on Defendants' motion to dismiss while there was confusion as to the date an object of the conspiracy was obtained.  Id.

## B.   Motion to Dismiss Third Superseding Indictment

On November 20, 2008, the grand jury returned the TSI. Defendant Beuret, this time without his co-defendant, moved to dismiss the TSI as untimely and for failure to sufficiently allege venue.  Defendant Beuret argues that the TSI, undisputedly untimely if taken alone, does not benefit from tolling due to the SSI because (1) the SSI was not validly pending at the time the TSI was issued, and (2) the TSI impermissibly broadens the charges in the SSI and so cannot relate back to that earlier

5

indictment.  Even if the TSI is timely, Defendant Beuret argues
that it also fails to allege venue and should be dismissed on
that ground.  On January 29, 2009, the Court heard oral argument
on the matter and reserved decision.

## IV.  DISCUSSION

Defendant Beuret challenges the TSI on its face.  Thus, the
Court proceeds with certain basic principles in mind.  It is well
established that "[a]n indictment returned by a legally
constituted and unbiased grand jury . . . if valid on its face,
is enough to call for trial of the charge on the merits."
Costello v. United States, 350 U.S. 359, 363 (1956); United
States v. Fisher, 871 F.2d 444, 451 (3d Cir. 1989).  An
"'indictment is sufficient if it, first, contains the elements of
the offense charged and fairly informs the defendant of the
charge against which he must defend, and, second, enables him to
plead an acquittal or conviction in bar of future prosecutions
for the same offense.'"  United States v. Destio, 153 Fed. App'x.
888, 892 (3d Cir. 2007) (quoting Hamling v. United States, 418
U.S. 87, 117 (1974)).  In considering a motion to dismiss an
indictment, the Court "accepts as true the factual allegations
set forth in the indictment."  United States v. Besmajian, 910
F.2d 1153, 1154 (3d Cir. 1990).

### A.   Timeliness of Third Superseding Indictment

There is no dispute that the TSI, without the benefit of

6

tolling, is untimely.  The statute of limits for the one count of
conspiracy in violation of 18 U.S.C. § 371 is five years.  18
U.S.C. § 3232.  The TSI was handed down on November 20, 2008,
more than five years after the last alleged overt act on November
6, 2002.  Nevertheless, under Friedman, the statute of
limitations may be tolled by the filing of a preceding
indictment.  649 F.2d at 203 (citing United States v. Grady, 544
F.2d 598 (2d Cir. 1976)).  The Third Circuit has adopted the
doctrine that "a valid indictment tolls the statute of
limitations and that return of a superseding indictment prior to
the dismissal of the original indictment does not violate the
statute of limitations if the superseding indictment does not
substantially alter the charge."  Friedman, 649 F.2d at 203;
United States v. Oliva, 46 F.3d 320, 324 (3d Cir. 1995).  The
Friedman/Grady rule consequently consists of two necessary
elements: (1) the preceding indictment relied upon must have been
validly pending at the time the superseding indictment was
issued; and (2) the superceding indictment cannot materially
broaden or substantially amend the charges.  See Friedman, 649
F.2d at 203-04; Grady, 544 F.2d at 601-02; United States v.
Rutkoske, 506 F.3d 170, 175 (2d Cir. 2007).  Defendant Beuret
argues that neither element is present here.  The Court will
address each in turn.

7

1.   Was the Second Superceding Indictment Validly
     Pending?

Defendant Beuret argues that the SSI was not validly pending
because it did not adequately allege venue and because the SSI
was also untimely.  The overt acts alleged to establish venue in
New Jersey and to bring the charge within the five-year statute
of limitations, according to Defendant Beuret, did not further
the alleged object of the conspiracy.  The Government first
responds that any potential problems with venue or timeliness
have no impact on whether the SSI was "validly pending" for
purposes of the Friedman/Grady analysis.  The Government further
insists that Defendant Beuret's arguments rely on an unreasonably
narrow interpretation of the SSI and that the Government is not
required to allege venue and timeliness with the level of detail
that Defendant Beuret demands.  This particular area of law is
undeveloped in this circuit, and there is no appeals court
opinion, published or unpublished, interpreting Friedman, nor is
there a district court opinion, published or unpublished,
considering the meaning of "validly pending."[3]  Nevertheless, it

---

[3] Amongst the other circuits, there is some disagreement as
to the meaning of "validly pending."  Compare United States v.
Crysopt Corp., 781 F. Supp. 375, 377-78 (D. Md. 1991) (preceding
indictment not validly pending because it failed to sufficiently
allege a crime) and United States v. Gillespie, 666 F. Supp.
1137, 1140 (N.D. Ill. 1987) (preceding indictment not validly
pending because it was issued by grand jury after their sitting
expired), with United States v. Smith, 197 F.3d 225, 228-29 (6th
Cir. 1999) (holding that "'[v]alidly pending' under the Grady
rule is unrelated to the issue of whether an indictment is

is unnecessary for the Court to resolve this question, for the Court finds that under any meaning of "validly pending," the SSI was validly pending when the TSI was handed down, as now discussed.

In order to address both parties' arguments it is necessary to interpret the SSI to determine what object or objects of the conspiracy are alleged. To do so, the Court finds guidance from the Third Circuit in United States v. Knox Coal Co., 347 F.2d 33 (1965). In Knox Coal, the defendant argued that the conspiracy count did not "fully and clearly set forth the purpose of the conspiracy" such that the indictment was not sufficient. 347 F.2d at 38. To determine the object of the conspiracy, the appeals court looked to both the charging paragraph and all the listed means and method by which the conspiracy had been accomplished, rejecting the defendant's argument that only the initial charging paragraph could be considered in determining the purpose of the conspiracy. Id. at 39.

---

defective or insufficient"). Because the Court finds that, under any interpretation of "validly pending," the SSI was valid, the Court will not attempt to define the phrase. It does appear, however, that the term "valid" should not be read out of the holdings in Friedman and Grady, so that the original indictment must possess certain hallmarks of validity. See Crysopt Corp., 781 F. Supp. at 377-78 (indictment that fails to allege crime invalid); Gillespie, 666 F. Supp. at 1140 (indictment issued by powerless grand jury is invalid); see also Rutkoske, 506 F.3d at 175 (suggesting that facially untimely indictment might be invalid). What those hallmarks may be, however, is best left for another day.

Defendant Beuret argues that Knox Coal is inapplicable to the present case because it arose in response to a challenge to the sufficiency of the indictment on grounds that the alleged purpose was ambiguous, whereas here, according to Defendant Beuret, the Court is only asked to interpret "the unambiguous language that is the charged object of the agreement."  According to Defendant Beuret, it is clear that the sole object of the conspiracy was to issue free-trading eContent stock to John Serubo, and thus the Court need not look elsewhere in the SSI to find the purposes of the conspiracy.  Contrary to this characterization, it is not unambiguous that this was the sole alleged object of the conspiracy.  The paragraph to which Defendant Beuret refers, which appears under the heading "Object of the Conspiracy," reads:

> It was an object of the conspiracy for [Defendants and co-conspirators] to issue free-trading eContent stock to [John Serubo], pursuant to a materially false and fictitious Form S-8 registration statement, in order to compensate [Serubo] and others who worked with him . . . for illegal stock promotion activities regarding eContent's publicly-traded stock.

(SSI ¶ 3.)  This paragraph does not establish that the only object of the conspiracy to issue stock to Serubo, but merely that this payment was an object.  Though not framed as a question regarding the sufficiency of the indictment, this Court faces the same question as the one posed in Knox Coal -- how to determine the object or objects of a conspiracy where there is no single

10

paragraph that makes this clear.

Thus, under Knox Coal, the Court finds that the charging paragraph, the paragraph laying out an object of the conspiracy, and the means and methods, establish (and thereby provided sufficient notice to Defendant Beuret) that the objects of the charged conspiracy were to manipulate the market for eContent stock and to reward Serubo and others for their assistance in manipulating that market.  See Knox Coal, 347 F.2d at 38-39; United States v. Borland, 309 F. Supp. 280, 288 (D. Del. 1970) (finding Knox Coal to be "a proper reminder to avoid a technical and narrow reading of an indictment"); see also United States v. Werme, 939 F.2d 108, 111 (3d Cir. 1991) ("The charging portion of a conspiracy count includes all paragraphs within that count except for allegations under the overt acts heading, unless those allegations are expressly incorporated.") (citing Knox Coal, 347 F.2d at 38).  Most significantly, the charging paragraph alleges conspiracy to commit two separate offenses: (1) willfully employing "manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities" in violation of Sections 78j(b) and 78ff(a) of Title 15 of the United States Code; and (2) knowingly and wilfully making untrue statements of material fact or omitting necessary facts when submitting the Form S-8, in violation of Section 77x of the Title 15 of the United States Code.  (SSI ¶ 2.)  The means and methods similarly

11

illustrate a conspiracy with the purpose of manipulating the
market for eContent stock to artificially inflate the price, (SSI
¶¶ 5, 6, 10), and conveying some of that stock to Serubo, at its
inflated value, to reward him and others for their efforts at
market manipulation, (SSI ¶¶ 7-9). In fact, if the sole purpose
were, as Defendant Beuret argues, to convey free-trading eContent
stock to John Serubo, this would render paragraph 5 (outlining
Serubo's market manipulation), paragraph 6 (outlining Defendant
Birks' market manipulation), and paragraph 10 (outlining the
deceptive sale of eContent stock to Camelot customers), of the
SSI means and methods, along with half of the charging paragraph,
irrelevant.

With this broader purpose in mind, the Court turns to
Defendant Beuret's position that the SSI did not adequately
allege venue.[4] For the purpose of a conspiracy charge, venue is
proper in any district in which an overt act in furtherance of a
conspiracy occurred.  18 U.S.C. § 3237(a)[5]; <u>United States v.</u>

_____

[4] The Court rejects the suggestion that venue need not be
alleged.  Though not a substantive element, venue is nevertheless
an element required by the Constitution and must be alleged in an
indictment.  <u>See</u> <u>United States v. Perez</u>, 280 F.3d 318, 327-30 (3d
Cir. 2002) (holding that venue is an element that must be
established by preponderance of the evidence); <u>see also</u> <u>United
States v. Sandini</u>, 803 F.2d 123, 127 (3d Cir. 1986) (noting
defendant waives right to challenge venue when defendant fails to
raise timely objection if the indictment reveals the venue defect
on its face).

[5]

    [A]ny offense against the United States begun in

12

Perez, 280 F.3d 318, 329 (3d Cir. 2002); United States v. Ochoa, 229 F.3d 631, 636 (7th Cir. 2000) ("[T]he traditional rule is that a conspiracy charge may be tried in any district in which an overt act of the conspiracy occurred."), cited with approval by Perez, 280 F.3d at 329.  Defendant Beuret argues that the none of the overt acts in the SSI alleged to have occurred in New Jersey were in furtherance of issuing eContent stock to Serubo and so could not establish venue.

In light of the above discussion regarding the scope of the conspiracy, Defendant's argument lacks merit.  The Court observes that as preamble to the listed overt acts, the SSI states, "In furtherance of the conspiracy and to effect its unlawful objects, the following acts were committed in the District of New Jersey and elsewhere."  (SSI at 8.)  This allegation alone may have been sufficient to allege venue in New Jersey.  See United States v. Mendoza, 108 F.3d 1155, 1156 (9th Cir. 1997) (broad allegation that crime occurred in Western District of Washington enough to avoid dismissal for improper venue, despite defendant's claim that crime actually occurred in California).  Furthermore, among the specifically alleged New Jersey overt acts, paragraph 19

_____

> one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).

13

alleges that,

> [o]n or about June 3, 2002, [Defendant Birks] and
> others caused Camelot to purchase approximately
> 40,000 shares of eContent stock from a market maker
> (a brokerage company that agreed to provide buy and
> sell prices in eContent stock, thereby ensuring the
> existence of a market for the stock) located in New
> Jersey, such purchases being designed to support
> the artificially high market price of eContent
> stock, on a day when [Serubo] and [AFP Limited,
> L.L.C., a limited liability corporation] were
> selling substantial quantities of thinly-traded
> stock.

(SSI ¶ 19.)  Similarly, paragraph 22 alleges that on or about
June 10, 2002, Ms. Eldridge and others "caused an accounting firm
in New Jersey to execute a consent incorporating certain
financial statements in connection with the Form S-8," (SSI ¶
22), and paragraph 26 alleges that on or about September 20,
2002, Defendant Birks and others "caused AFP to sell
approximately 29,000 shares of eContent's publicly traded stock,
using market makers located in New Jersey," (SSI ¶ 26).  These
acts most certainly furthered the goal of market manipulation.
Defendant Beuret responds that, even if they furthered the
conspiracy, these overt acts cannot support venue in New Jersey
because Defendant Birks' and Ms. Eldridge's affirmative acts did
not actually take place in New Jersey.  These specific
allegations of overt acts in New Jersey, read together with the
general allegation that some overt acts did take place in New
Jersey, are sufficient to properly allege venue in the District

14

of New Jersey.[6]  Whether the Government can prove venue at trial

is a question left for the jury.

     Defendant Beuret's argument that the SSI was not validly

_____

     [6] In addition "an innocent act by a third party, if caused
by previous act or contact on the part of one of the
conspirators" may constitute an overt act for the purpose of
establishing venue in the district where the act occurred.  See
United States v. Johnson, 165 F.2d 42, 45 (3d Cir. 1948), cited
with approval by United States v. Perez, 223 F. App'x 336, 341
n.4 (5th Cir. 2007); Perez, 223 F. App'x at 340-41 (overt act in
district by innocent agent acting at direction of conspirator
sufficient to establish venue in that district) (quoting 4 Wayne
R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure §
16.2(f) (2d ed. 1999)); Winebrenner v. United States, 147 F.2d
322, 325 (8th Cir. 1945) ("If . . . Mellor was induced by
Winebrenner to make a fraudulent bid on work for the Government,
even though Mellor was innocent, the conspiracy was brought
within the jurisdiction of the court in the Western District of
Missouri, where the contracts were carried out.").
     The case relied on by Defendant Beuret, United States v. Ben
Zvi, 242 F.3d 89, 97 (1st Cir. 2001), held on a motion to dismiss
following trial for wire fraud conspiracy that the conspiracy
count charging defendants with "causing" an electronic transfer
of funds on August 15, 1998 from Lloyd's of London to defendant's
attorney could not constitute an overt act for purposes of
statute of limitations.  The First Circuit observed that the
evidence showed "[t]he wiring of funds by Lloyd's to its New York
counsel on August 15, 1988, though precipitated by earlier
fraudulent acts and omissions of defendant and her
coconspirators, did not involve or otherwise turn on any
identifiable act or omission of the conspirators as of the time
of the wire transfer."  Id.  This is not inconsistent with the
above cited cases, which require some affirmative action by co-
conspirators.  In this case, the overt acts specifically alleged
to have occurred in New Jersey all charge that on particular
dates the co-conspirators affirmatively caused a particular
result (Camelot's purchase of stock, an accounting firm's
execution of a consent, AFP's sale of stock).  (SSI ¶¶ 19, 22,
26.)  If at trial the Government does not establish that the co-
conspirators did, in fact, cause these results, then Defendants
are free to move again to dismiss for lack of venue.  At this
stage, however, the Court is bound to accept the factual
allegations of the indictments on their face.

pending because it was time-barred similarly fails, given the
scope of the charged conspiracy.  "For a conspiracy indictment to
fall within the statute of limitations, it is 'incumbent on the
Government to prove that at least one overt act in furtherance of
the conspiracy was performed' within five years of the date the
Indictment was returned."  United States v. Bornman, --- F.3d ---
, 2009 WL 567072, at *2 (3d Cir. Mar. 6, 2009) (quoting Grunewald
v. United States, 353 U.S. 391, 396 (1957)).  The parties here
agree that, taking into consideration two tolling agreements
between Defendant Beuret and the Government, the bar date for the
SSI is June 20, 2002.  All three alleged overt acts dated on or
after June 20, 2002 were in furtherance of the conspiracy's
purposes of market manipulation or compensating Serubo with
eContent stock: "On or about June 20, 2002, defendant Cornelia
Eldridge and co-conspirators William Campbell and Gary Goodell
caused eContent to file with the SEC the materially false and
fictitious Form S-8 . . .," (SSI ¶ 24)[7]; "On or about August 19,
2002, [Serubo] transferred 35,000 shares of free-trading eContent
stock from [Serubo's] account at Camelot, to AFP's account at
Camelot," (SSI ¶ 25); and "On or about September 20, 2002,

---

[7] To the extent Defendant Beuret argues that Form S-8 was
not actually filed on June 20, 2002, this argument is both
irrelevant, in light of the objects of the conspiracy, and
meritless, because the Court is obligated to take the alleged
facts as true in a motion to dismiss, Besmajian, 910 F.2d at
1154.

16

[Defendant Birks], and co-conspirators Anthony Castore and P.P., caused AFP to sell approximately 29,000 shares of eContent's publicly traded stock, using market makers located in New Jersey," (SSI ¶ 26).  Consequently, the SSI (at least on its face) alleged overt acts in furtherance of the conspiracy's purposes such that the indictment was not time-barred.

There being no defect in the SSI with regards to venue or statute of limitations, the Court finds that the SSI was "validly pending" for the purposes of the <u>Friedman/Grady</u> analysis.

> 2.  <u>Did the Third Superseding Indictment Materially Broaden or Substantially Amend the Charges in the Second Superseding Indictment?</u>

Defendant Beuret's second attack on the timeliness of the TSI and the application of tolling under <u>Friedman/Grady</u> targets the changes the TSI made to the SSI.  Defendant Beuret argues that the TSI impermissibly broadened and materially amended the charges by (1) changing the date Serubo received the eContent stock, (2) alleging that Form S-8 violated SEC regulations, (3) expanding the duration of the conspiracy, and (4)expanding Defendant Beuret's role in the conspiracy, such that the TSI cannot relate back to the SSI.  The Government insists that the TSI changes and expands on the details of the conspiracy outlined in the SSI, but does not materially alter or substantially amend the charged conspiracy.  The Court agrees.  The modifications made in the TSI do not alter or change the charged conspiracy in

17

the SSI such that Defendant Beuret was not on notice of the charges he would face under the TSI, and thus the TSI benefits from tolling by the SSI.

The second prong of the Friedman/Grady test turns on the concept of notice.  The Grady court observed that tolling the statute of limitations while there is a validly pending indictment, so long as any superseding indictment does not broaden the charges in the initial indictment, "is a sensible application of the policies underlying statute of limitations." 554 F.2d at 601.  The court noted that, "defendants are put on timely notice, because of the pendency of an indictment, filed within the statutory time frame, that they will be called to account for their activities and should prepare a defense."  Id. Thus, in considering whether a superseding indictment impermissibly broadens the charges of the initial indictment, the Court will look to see if the initial indictment gave the defendant sufficient notice of the charges he must defend against in the superseding indictment.  United States v. Salmonese, 352 F.3d 608, 622 (2d Cir. 2003); United States v. Pearson, 340 F.3d 459, 465 (7th Cir. 2003), reversed on other grounds by Hawkins v. United States, 543 U.S. 1097 (2005); United States v. Lash, 937 F.2d 1077, 1081-82 (6th Cir. 1991).  To make this determination, the Court will consider "whether the additional pleadings allege violations of a different statute, contain different elements,

18

rely on different evidence, or expose the defendant to a potentially greater sentence."  Salmonese, 352 F.3d at 622 (citing United States v. Ben Zvi, 168 F.3d 49, 55 (2d Cir. 1999)).

To begin with, for the ease of analysis and review, and because Friedman requires a side-by-side comparison of the initial and superseding indictments, the Court will lay out the two indictments below, showing the changes made by the TSI.  The relevant changes are almost exclusively under "overt acts" (except for the charging paragraph, which expanded the length of the conspiracy from February, 2002 to September, 2002 in the SSI to February, 2002 to November, 2002 in the TSI) and only those portions of the indictments are included.[8]  The allegations in [brackets] were included in the SSI and omitted in the TSI.  The underlined allegations were added to the TSI and were not included in the SSI.

<u>Overt Acts</u>
    In furtherance of the conspiracy and to effect its unlawful objects, the following overt acts were committed in the District of New Jersey and elsewhere:
11.  On or about February 18, 2002, co-conspirator John P. Serubo[9] wrote a check of $50,000, payable to defendant

_____

    [8] The other changes in the TSI, as previously discussed, are the removal of the late Cornelia Beuret as a co-defendant (and renaming her a co-conspirator) and replacing "CW-1" with "John P. Serubo."

    [9] In an attempt to avoid confusion, though the SSI refers to Serubo as CW-1, the Court will refer to him by his given name as done in the TSI, without underlining or bracketing the name.

ROBERT BEURET, to be used as a capital investment in Camelot.

12.  On various dates between in or about March, 2002, and in or about May, 2002, defendant ROBERT BEURET and co-conspirator John P. Serubo placed telephone calls to a securities broker located in New Jersey, to discuss eContent stock.

13.  On or about May 29, 2002, defendant ROBERT BEURET sent an e-mail to M.S., a Camelot customer in New Jersey, telling M.S. that M.S. should expect eContent stock to "get going soon."

14.  On or about May 29, 2002, defendant FREDERICK J. BIRKS and co-conspirators Anthony Castore and P.P. formed a Florida limited liability corporation, "AFP Limited, L.L.C." ("AFP").

15.  On or about May 31, 2002, [defendant] Cornelia Eldridge and John P. Serubo executed a materially false and fictitious Consulting Agreement between eContent and John P. Serubo. This Consulting Agreement was materially false in that it stated that co-conspirator John P. Serubo would perform consulting and advisory services for eContent regarding the marketing of eContent's vertically integrated e-commerce services, whereas, in truth and in fact, co-conspirator John P. Serubo had performed, and would continue to perform, stock promotion activities for eContent.  In addition, the Consulting Agreement was materially false in that it stated that co-conspirator John P. Serubo would receive 1.1 million shares of eContent stock, registered on Form S-8, as compensation for these services, whereas, in truth and in fact, the stock was to be issued to co-conspirator John P. Serubo to compensate him for his stock promotion activities on behalf of eContent.

16.  On or about June 3, 2002, defendant FREDERICK J. BIRKS and co-conspirators Anthony Castore and P.P. opened a brokerage account at Camelot in the name of AFP.

[16(a).  On or about June 3, 2002, defendant Cornelia Eldrige and co-conspirators William Campbell and Gary Goodell caused eContent to deposit 1.1 million free-trading shares of eContent stock to a brokerage account that John P. Serubo held at Camelot.]

17.  On or about June 3, 2002, defendant FREDERICK J. BIRKS approved a Camelot trade ticket regarding the sale of 100,000 shares of eContent stock from John P. Serubo's account at Camelot, directly to the accounts of other customers at Camelot.

18.  On or about June 3, 2002, John P. Serubo transferred 175,000 shares of eContent stock from John P. Serubo's

brokerage account at Camelot, to AFP's brokerage account at Camelot.

19.   On or about June 3, 2002, defendant FREDERICK J. BIRKS approved a Camelot trade ticket regarding the sale of 100,000 shares of eContent stock from AFP's account at Camelot, 90,000 of which were sold directly to the accounts of other customers at Camelot.

20.   On or about June 3, 2002, defendant FREDERICK J. BIRKS and others caused Camelot to purchase approximately 40,000 shares of eContent stock from a market maker (a brokerage company that agreed to provide buy and sell prices in eContent stock, thereby ensuring the existence of a market for the stock) located in New Jersey, such purchases being designed to support the artificially high market price of eContent stock, on a day John P. Serubo were selling substantial quantities of the thinly traded stock.

21.   On or about June 7, 2002, co-conspirators Cornelia Eldridge, William Campbell, and Gary Goodell executed a materially false and fictitious Form S-8 registration statement authorizing the issuance of 1.1 million free-trading shares of eContent stock to John P. Serubo.

22.   On or about June 10, 2002, defendant FREDERICK J. BIRKS approved a Camelot trade ticket regarding the sale of 100,000 shares of eContent stock from John P. Serubo's account at Camelot, directly to the accounts of other customers at Camelot.

23.   On or about June 10, 2002, co-conspirators Cornelia Eldridge, William Campbell, and Gary Goodell caused an accounting firm in New Jersey to execute a consent incorporating certain financial statements in connection with the Form S-8 registration statement described in paragraph 21 above.

24.   On or about June 18, 2002, defendant FREDERICK J. BIRKS approved Camelot trade tickets regarding the sale of 51,000 shares of eContent stock from AFP's account at Camelot, including sales directly to the accounts of other customers at Camelot.

25.   On or about June 20, 2002, defendant ROBERT BEURET and co-conspirators Cornelia Eldridge, William Campbell, Gary Goodell, and John P. Serubo caused eContent to file with the SEC the materially false and fictitious Form S-8 registration statement referenced in paragraph 21 above. In addition to the material falsities in the Consulting Agreement attached as an exhibit to the Form S-8 registration statement, which are set forth in paragraph 15 above, the Form S-8 registration statement as a whole was materially false and misleading in that it failed to

state that the stock being registered was issued to co-conspirator John P. Serubo in order to compensate him for promoting eContent's stock, a use prohibited by relevant SEC regulations.

25.[10]  On or about June 26, 2002, defendant ROBERT BEURET and co-conspirators Cornelia Eldridge, William Campbell, Gary Goodell, and John P. Serubo caused eContent's stock transfer agent to issue 1.1 million shares of free-trading eContent stock to John P. Serubo, pursuant to the materially false and fictitious Form S-8 registration statement described in paragraph 25 above.

26.  On or about July 1, 2002, John P. Serubo received 1.1 million shares of free-trading eContent stock into his brokerage account at Camelot.

27.  On or about August 19, 2002, John P. Serubo transferred 35,000 shares of free-trading eContent stock from John P. Serubo's account at Camelot, to AFP's account at Camelot.

28.  On or about September 20, 2002, defendant FREDERICK J. BIRKS, and co-conspirators Anthony Castore and P.P., caused AFP to sell approximately 29,000 shares of eContent's publicly traded stock, using market makers located in New Jersey.

29.  On or about November 5, 2002, co-conspirator John P. Serubo sold approximately 295,100 shares of eContent stock.

30.  On or about November 6, 2002, co-conspirator John P. Serubo sold approximately 81,325 shares of eContent stock.

All in violation of Title 18, United States Code, Section 371.

As previously outlined, Defendant Beuret highlights four areas of change from the SSI to the TSI that, he suggests, impermissibly broadened the charges against him.  First, Defendant Beuret argues that by changing the date on which Serubo allegedly received the eContent stock the TSI "expanded the scope" of the conspiracy.  The Court rejects this argument.

---

[10] The TSI, incorrectly, has two paragraphs numbered 25.

Certainly, the date that Serubo was paid for his alleged illegal conduct is significant, but as this Court previously found, changing the date when this object was accomplished does not change an essential element of the crime.  Birks, 2008 WL 4104570, at *6.  To the extent the new date has any impact on the Government's case against both defendants, it merely weakens the temporal connection between the alleged market manipulation on June 3, 2002, and the supposed compensation that Serubo received. Though it now may be more difficult for the Government to prove that Serubo was being compensated for market manipulation when he received the stock, Defendant Beuret is still faced with the same charge of conspiracy with the same objects -- the new date does not expand the conspiracy or alter the substance of the charges in any way.

Second, Defendant Beuret suggests that the Government has presented a "new theory" in the TSI, in that TSI explains how the Form S-8 was materially false and fictitious, while the SSI merely states that it was false.  This argument lacks merit, for these new details explaining the alleged falsity -- that the Form S-8 was false because it violated SEC regulations -- do not expand or amend the charges, but simply amplify and further explain an allegation already made in the SSI.  See Friedman, 649 F.2d at 204 (adding "additional underlying details" does not impermissibly broaden the charges in initial indictment).

23

Defendant Beuret knew he would have to defend against the claim that he helped file a false and fictitious Form S-8 and the only difference is that now he knows the Government's theory regarding its falsity, which is more narrow than the open-ended allegation of falsity in the SSI.

Third, Defendant Beuret notes that the conspiracy alleged in the TSI (from February, 2002 to November, 2002) is longer than that alleged in the SSI (from February, 2002 to September, 2002). In addition, Defendant Beuret points out that the TSI alleges more conspiratorial activity between February and May than was included in the SSI.  This few additional months, however, do not materially amend or broaden the charges of conspiracy.  See Pearson, 340 F.3d at 465 (superseding indictment did not impermissibly broaden the charge where it extended the conspiracy by four years and added three overt acts).  No new conspiracy was alleged and Defendant Beuret was on notice that he would have to defend against all efforts to pursue the objectives of that conspiracy.

Finally, Defendant Beuret maintains that the TSI impermissibly broadened the conspiracy charge against him because it expanded his role in the conspiracy.  He argues that while the SSI does not allege overt acts indicating he played any role in market manipulation, the TSI now includes overt acts which suggest that he was involved in this manipulation.  It is true

24

that paragraph 12 ("On various dates between in or about March, 2002, and in or about May, 2002, defendant ROBERT BEURET and co-conspirator John P. Serubo placed telephone calls to a securities broker, located in New Jersey, to discuss eContent stock"), and paragraph 13 ("On or about May 29, 2002, defendant ROBERT BEURET sent an e-mail to M.S., a Camelot customer in New Jersey, telling M.S. that M.S. should expect eContent stock to 'get going soon'") in the TSI include information about Defendant Beuret's alleged role in the conspiracy to manipulate the market for eContent stock that was not included in the SSI. This does not, however, amount to an additional charge against Beuret such that the SSI was materially amended. Once again, the touchstone is notice. The SSI charged Defendant Beuret in a conspiracy to manipulate markets and compensate Serubo for his work in manipulating the markets. As such, he was on notice that he would have to defend against charges of market manipulation. The SSI and the TSI allege the same conspiracy, with the same objects, in violation of the same statute, and the TSI merely adds additional detail regarding the role Defendant Beuret played in that conspiracy. See United States v. Bryant, 998 F.2d 21, 25 (1st Cir. 1993) ("When a superseding indictment does no more than specify the exact mechanics of a defendant's participation in a previously charged offense, it does not represent a material broadening or substantial amendment of the original indictment.") This does

25

not broaden the charge Defendant Beuret already faced.  See Ben Zvi, 168 F.3d at 55 (new counts in superseding indictment could not relate back to preceding indictment where they required defendants to defend against additional charges that alleged violations of a different statute, contained different elements, relied on different evidence, and exposed defendants to a potentially much greater sentence).

The Court rejects Defendant Beuret's suggestion that the TSI, by describing some of his alleged efforts at market manipulation, now requires him to prepare a new defense not necessary under the SSI.  The Government was free, proceeding under the SSI, to offer any relevant and probative evidence of Defendant Beuret's manipulation of the eContent market, see United States v. Adamo, 534 F.2d 31, 38 (3d Cir. 1976) (in conspiracy prosecution, Government not limited in its proof at trial to overt acts alleged in the indictment), and thus Defendant Beuret would have been required to prepare this defense under either indictment.  The SSI was not required to list such evidence against Beuret or any other conspirator in an all-inclusive series of overt acts.  The SSI informed Defendant Beuret that he would have to account for his conduct in furtherance of the alleged conspiracy and that same conduct was ultimately charged in the TSI.  The TSI thus relates back to the SSI and may be tolled by that validly pending indictment.

26

### B.    Venue

The Court, having found that the TSI is timely, must address Defendant Beuret's argument that the TSI does not adequately allege venue.  The Court rejects this argument for the same reasons the Court rejected the same argument with regards to the SSI in Part IV.A.1 of this Opinion.  As previously noted, the changes in the TSI (underlined in the excerpt provided in Part IV.A.2) do not alter the nature of the charged conspiracy or its objects (the language of the charging paragraphs of the two indictments are virtually identical, as are the means and methods in both).  Thus, the TSI charges Defendant Beuret with a conspiracy to (1) manipulate the market for eContent stock and (2) compensate Serubo for the market manipulation.  With these objects in mind, Defendant Beuret's motion to dismiss venue fails, because the TSI includes the same allegations of venue, both general (in the preamble to the listed overt acts) and specific (paragraphs 20, 22 and 28), that were sufficient to allege venue in the SSI, see Part IV.A.1 supra.[11]

---

[11] The TSI adds two other New Jersey overt acts, charging Defendant Beuret with calling a securities broker in New Jersey regarding eContent stock and sending an e-mail to a Camelot customer in New Jersey urging telling him to "expect eContent stock to 'get going soon.'" (TSI ¶¶ 12, 13.)  Finally, the TSI, like the SSI, contained the overall allegation that the overt acts "were committed in the District of New Jersey and elsewhere," as noted above.

**V.     CONCLUSION**

For the foregoing reasons, the Court will deny Defendant
Beuret's motion to dismiss the Third Superseding Indictment
charging him with conspiracy to defraud the United States,
finding it is not barred by the statute of limitations, nor does
it lack venue.

The accompanying Order shall be entered.


**March 30, 2009**                          **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         U.S. District Judge

28